UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**KIMBERLY PACE**                                                                                       **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO. 5:22-CV-P167-JHM**

**MANDY GRAVES et al.**                                                                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Kimberly Pace, a convicted inmate at the Ballard County Detention Center (BCDC), brought this 42 U.S.C. § 1983 lawsuit. This matter is before the Court for screening under 28 U.S.C. § 1915A. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the Court will dismiss some of Plaintiff's claims and allow others to proceed.

### I. STATEMENT OF CLAIMS

Plaintiff filed a complaint (DN 1) and an amended complaint (DN 5). She names as Defendants in their individual and official capacities BCDC Jailor Mandy Graves; Dr. Shawnie Wilson of "Wilson Medical" who contracts with BCDC; BCDC Chief Deputy Jailer Matt Quimby; Dr. Phenonin, a neurosurgeon at Jackson Purchase Medical Center who contracts with BCDC; and BCDC Nurse Mattie Beergeron.[1] She also names BCDC Dr. Scott Wilson in his official capacity, as well as "head of medical" Christina Harvell, without specifying in what capacity.

Plaintiff alleges that she slipped in a puddle from a leak in the BCDC ceiling, fracturing two vertebrae. She further alleges that she repeatedly requested an x-ray of her back after her fall but that her back was not x-rayed for two months, at which time the broken vertebrae were

---

[1] Plaintiff spells this Defendant's name as "Matti Bergioun" in the amended complaint. The Court is not sure which spelling is correct. The Court will use the spelling "Mattie Beergeron" herein.

discovered. She states that she was than seen by a neurosurgeon, Dr. Phenonin, who denied her treatment because the fractures were "'old.'" According to Plaintiff, the reason her fractures were considered old was because she was forced to wait two months to have an x-ray of her back at BCDC.

Plaintiff states, "I also have stage two colon cancer that I am not being treated for, or is even being acknowledged." She also states that although she has been incarcerated for ten months, she has yet to receive any treatment for "Hep. C that is on my medical record." She alleges that Dr. Shawnie Wilson refuses her treatment for Hepatitis C, colon cancer, or her fractured back. She further alleges that Defendant Beergeron knew about all of Plaintiff's medical problems, had daily contact with inmates, and "played a key role in [Plaintiff] not receiving treatment."

According to Plaintiff, "I was kept in a punishment cell for four months, after falsifying an incident, criminal charges were filed. Plus I was punished by the jail." She appears to be directing this claim against Defendant Quimby, who she alleges brought criminal charges against her and has denied her participation in classes and work programs after she filed a sexual harassment Prison Rape Elimination Act charge against him. She asserts that Defendant Quimby also continuously threatens to place her in segregation for using the grievance procedure and requesting medical treatment.

Plaintiff alleges that Defendant Graves "has denied [her] for work program" even though she has been classified to work for "work credit"; has denied her requests to attend classes; and has denied her a transfer to a medical facility to treat her for Hepatitis C, colon cancer, and the injury to her back. She asserts that Defendant Graves "as jailer . . . allowed the continuous maltreatment of [Plaintiff] within her facility."

Plaintiff further alleges that her "asthma stays flared up due to mildew and black mold in vents;" that her cell has no warm or hot water except between midnight and 5:00 a.m., requiring her to shower with cold water; and that "[w]ith all my underlying health issues, being exposed to large amounts of inmates with the flu and Covid 19 can result in my death and/or my health getting worse by the day." (cleaned up).

As relief, Plaintiff asks for compensatory and punitive damages, transfer to another facility, and release from prison. She also asks that Dr. Shawnie Wilson's contract with BCDC be canceled and for Dr. Phenonin's medical license to be reviewed and that he be permanently restricted from treating inmates.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### A. Official-capacity claims

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). This means that Plaintiff's official-capacity claims are actually against Ballard County, Defendants' employer.

A municipality such as Ballard County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Id.* To state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, with the exception of her allegation related to black mold/mildew in the vents which affects her asthma, her official-capacity claims will be dismissed because Plaintiff's

4

allegations pertain only to herself, and she does not allege that any constitutional violation occurred pursuant to a policy or custom of Ballard County.

## B. Individual-capacity claims

### 1. Dr. Phenonin

Plaintiff's allegations against Dr. Phenonin, who for purposes of this initial review, the Court will assume is a state actor because he was acting under contract with BCDC, are that he denied her treatment because her vertebrae fractures were "'old.'"

An Eighth Amendment claim for deliberate indifference to serious medical needs has both an objective and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937-38 (6th Cir. 2018). To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the subjective component, the plaintiff must show that "an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. The plaintiff must demonstrate that the official was aware of facts from which an inference of substantial risk of serious harm to inmate health or safety could be drawn and that the official actually drew the inference. *Id*.

According to Plaintiff, the reason her fractures were considered old was because she was forced to wait two months to have an x-ray of her back. She does not allege that Dr. Phenonin was wrong in considering her fractures old or that he was responsible for the delay in taking her x-ray. In fact, she attributes the delay in being x-rayed solely to the denial of her requests to have an x-ray at BCDC. Accordingly, the Court will dismiss the claim against Dr. Phenonin.

*2. Defendants Dr. Scott Wilson and Harvell*

Plaintiff makes no specific allegations against either Dr. Scott Wilson or Defendant Harvell. She merely identifies Dr. Scott Wilson as a doctor at BCDC and Defendant Harvell as "head of medical."

If a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims because the complaint did not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each" alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

Additionally, Plaintiff may not seek to hold these Defendants liable based solely upon their supervisory roles. Supervisory liability generally does not apply under § 1983. The doctrine of *respondeat superior* does not impute liability onto supervisory personnel, *see Monell*, 436 U.S. at 691-95, unless a plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's failure to supervise, train, or control an employee is not actionable under § 1983 unless the plaintiff shows "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct[.]" *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff has not done so here with regard to Defendants Dr. Scott Wilson and Harvell. Accordingly, the Court will dismiss the claims against them.

*3. Cold shower claim*

The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the "'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). While the Constitution "does not mandate comfortable prisons," the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Here, Plaintiff's claim that she must take cold showers because hot water is available only during limited hours does not rise to the level of a constitutional violation. *See, e.g.*, *Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) ("The district court . . . properly dismissed Hopkins's claims relating to the absence of hot water in his cell. Prisoners do not have a constitutional right to hot water under the Eighth Amendment."); *Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 5866453, at *2 (W.D. Ky. Nov. 19, 2012) (finding that the plaintiff's claim that some cells had no hot water was not a constitutional violation).

*4. COVID-19*

Plaintiff alleges that due to her underlying health issues, "being exposed to large amounts of inmates with the flu and Covid 19 can result in my death and/or my health getting worse by

7

the day." The Court finds this allegation too speculative to state a claim upon which relief may be granted. It is not clear that she is alleging that she is being exposed to inmates with flu and COVID-19, but rather that, if she were, with her underlying conditions she would be in danger. If she is being exposed to "large amounts" of inmates with either of these illnesses, she does not say how she knows that they are infected with flu and/or COVID-19 and what constitutes exposure to "large amounts" of these inmates. *See Abner v. Focus: Hope*, 93 F. App'x 792, 793 (6th Cir. 2004) (stating that the court is not "required to accept non-specific factual allegations and inferences or unwarranted legal conclusions"). In short, she has not provided factual allegations that would "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Court will dismiss this claim for failure to state a claim.

*5. Defendant Graves*

Plaintiff alleges that Defendant Graves denied her the opportunity to participate in the "work program" and to attend classes and has denied her requests for a transfer to another facility.

There is no constitutional right to vocational or educational programs in prison. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (holding there is no right to rehabilitation or vocational classes). Nor does Plaintiff possess a right created by the Constitution to prison employment. *Rhodes*, 452 U.S. at 347-49; *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Further, Plaintiff does not have a constitutional right to be incarcerated at a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Accordingly, Plaintiff fails to state a claim related to access to classes or employment or her being denied a transfer.

Plaintiff also asserts that Defendant Graves "as jailer . . . allowed the continuous maltreatment of [Plaintiff] within her facility." As explained above, Plaintiff cannot state a claim based on supervisory liability without showing encouragement or direct participation in the specific misconduct. *See Bellamy*, 729 F.2d at 421. The individual-capacity claims against Defendant Graves will be dismissed.

*6. Release from prison*

Plaintiff's request for release from incarceration also will be dismissed. A challenge to the fact or duration of Plaintiff's confinement must be brought as a petition for habeas corpus under 28 U.S.C. § 2254 and is not cognizable in this civil-rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).

**IV. CONCLUSION AND ORDER**

For the foregoing reasons,

**IT IS ORDERED** that, except for her official capacity claim related to black mold/mildew, Plaintiff's official-capacity claims; her claims related to cold showers and COVID-19; her claims against Defendants Dr. Scott Wilson, Harvell, and Graves; and her request for release from prison are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court **DIRECTS** the Clerk of Court to **terminate** Dr. Scott Wilson, Christina Harvell, and Mandy Graves as Defendants in this action and to **add** Ballard County as a Defendant.

9

**IT IS FURTHER ORDERED** that Plaintiff's prisoner application to proceed without prepayment of fees (DN 3) is **DENIED as moot**.

The Court will enter a separate service and scheduling order to govern the development of the remaining claims, *i.e.*, the black mold/mildew claim against Ballard County, the retaliation claim against Defendant Quimby; and the individual-capacity Eighth Amendment claims related to deliberate indifference to Plaintiff's serious medical needs against Defendants Dr. Shawnie Wilson and Beergeron.

Date: May 23, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants Quimby, Shawnie Wilson, and Beergeron
    Ballard County Attorney
4414.009